1  EVAN R. MOSES, SBN 198099
   evan.moses@ogletree.com
2  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
3  400 South Hope Street, Suite 1200
   Los Angeles, CA  90071
4  Telephone:  213-239-9800
   Facsimile:   213-239-9045
5
   MICHAEL J. NADER, SBN 200425
6  michael.nader@ogletree.com
   ALEXANDRA M. ASTERLIN,
7   SBN 221286
   alexandra.asterlin@ogletree.com
8  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
9  500 Capitol Mall, Suite 2500
   Sacramento, CA  95814
10 Telephone:  916-840-3150
   Facsimile:   916-840-3159
11
   Attorneys for Defendant
12 T-MOBILE USA, INC. dba T-MOBILE

13                    UNITED STATES DISTRICT COURT

14                    CENTRAL DISTRICT OF CALIFORNIA

15

16 | EZEQUIEL PAREDES JR., | Case No. _____ |
|---|---|
17 | Plaintiff, | **DEFENDANT T-MOBILE USA, INC. dba T-MOBILE'S NOTICE OF REMOVAL TO U.S. DISTRICT COURT** |
18 | vs. | |
19 | T-MOBILE USA, INC. dba T-MOBILE, a California corporation; and DOES 1 through 100, inclusive, | [Filed concurrently with Civil Cover Sheet; Certificate of Interested Parties; Corporate Disclosure Statement; Declaration of Alexandra M. Asterlin and Janna Abler; and Notice of Related Cases] |
20 | | |
21 | Defendants. | |
22 | | |
23 | | Action Filed:    January 26,2023
Removal Filed:   March 1, 2023
Trial Date:        None |
24 | | |

25

26

27

28

DEFENDANT'S NOTICE OF REMOVAL TO U.S. DISTRICT COURT

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF EZEQUIEL PAREDES, JR., AND HIS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that through this notice ("Notice"), Defendant T-MOBILE USA, INC., dba T-MOBILE ("Defendant"), effects the removal of this action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California (Western Division).  Defendant bases this removal on 28 U.S.C. sections 1332(a) (diversity jurisdiction), 1441(b), and 1446, as follows:

**I.    TIMELINESS OF REMOVAL**

1.    Plaintiff EZEQUIEL PAREDES, JR. ("Plaintiff") filed a Complaint against Defendant in Los Angeles County Superior Court, State of California, Case No. 23VECV00365, on January 26, 2023. Pursuant to 28 U.S.C. section 1446(a), true and correct copies of the Summons and Complaint, and all other process, pleadings, and orders served on Defendant in the State Court Action, are attached to this Notice of Removal as **Exhibit A**. On or about March 1, 2023, Defendant filed an Answer to the Complaint. A true and correct copy of that Answer is attached to this Notice of Removal as **Exhibit B**.

2.    On February 1, 2023, Defendant received service of the Summons and Complaint through its registered agents for service of process. These documents were the initial pleadings received by Defendant setting forth of the claims upon which this action is based and are included in **Exhibit A**.

3.    The time to remove under 28 U.S.C. section 1446(b) does not begin to run until receipt by Defendant, through service or otherwise, of a pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005).

4.     Defendant is informed and believes there has been no service of process upon Defendant Does 1 through 100, nor other parties, named or otherwise. The identification of "Doe" defendants does not affect removal to this Court. All existing and served Defendants consent and join in the removal of this action.

5.     Thirty (30) days since service of the Summons and Complaint have not yet expired. Accordingly, removal of this action is timely under 28 U.S.C. § 1446(b).

## II.     <u>GROUNDS FOR REMOVAL</u>

6.     This action is one which may be removed to this Court by Defendant pursuant to 28 U.S.C. §§ 1332, 1441, 1446, in that there is complete diversity of citizenship among the parties, and Plaintiff seeks damages in excess of the minimum statutory amount in controversy.

### A.     <u>Diversity of Citizenship Exists Between the Parties.</u>

7.     A person is a citizen of the state in which he or he is domiciled. *Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088, 1090 (9th Cir. 1983). A party's residence is prima facie evidence of his or his domicile. *Ayala v. Cox Auto., Inc.,* No. CV 16-06341-GHK (ASx), 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)). Plaintiff has alleged that at all relevant times, he was a resident of the State of California. (Complaint, ¶1.)  These allegations are prima facie evidence of domicile, which creates a rebuttable presumption sufficient to support removal. *Lew v. Moss,* 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in state court Complaint create rebuttable presumption of domicile). Moreover, Plaintiff listed a California address as his residence during his entire employment with T-Mobile.  (Declaration of Janna Abler ("Abler Decl."), ¶4.))

8.     Plaintiff is therefore considered a citizen of California for purposes of removal. *See Ayala,* 2016 WL 6561284, at *4.

9.     A corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1).

10.     Defendant T-MOBILE USA, INC. is incorporated under the laws of the State of Delaware. (Abler Decl., ¶2.)

11.     The Supreme Court has interpreted the phrase "principal place of business" in 28 U.S.C. section 1332(c)(1) to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," i.e., its "nerve center," which "should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination." *The Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).

12.     At the time this action was commenced in state court, Defendant's principal place of business was, and still is, in the city and county of Bellevue, Washington. (Abler Decl., ¶2.) In Bellevue, Washington, Defendant performs the vast majority of their executive and administrative functions, including operations management, human resources, finance, information technology, distribution operations, and their legal, sales and marketing functions. (Abler Decl., ¶2.) As such, Defendant maintains its principal places of business in Bellevue, Washington. Defendant is, therefore, a citizen of both Delaware and Washington.

13.     "For purposes of removal…the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. §1441 (b)(1). Inclusion of "DOE" defendants in a state court Complaint has no effect on removability. *Newcombe v. Adolf Coors Co.,* 157 F.3d 686, 690 (9th Cir. 1998) (holding that in determining whether diversity of citizenship exists, only the named defendants are considered.) Therefore, Plaintiff's inclusion of DOES 1 through 100 in the Complaint is inapposite to the issue of diversity or removal.

14.     Pursuant to 28 U.S.C. §§ 1332(a) and 1441(a), this Court has original jurisdiction over this case because Plaintiff is and was, at all times relevant to this action, a citizen of the State of California, and Defendants is and was, at all times relevant to this action, a citizen of the States of Delaware and Washington.

Therefore, complete diversity between Plaintiff and Defendant exists now, and did exist at the time the Complaint was filed.

**B.    The Amount In Controversy Exceeds $75,000.00.**

15.    The District Courts of the United States have original and removal jurisdiction over any action where the amount in controversy exceeds $75,000 and diversity of citizenship exists between the plaintiff and the defendant. 28 U.S.C. §§ 1332(d), 1441(b). When a defendant removes to Federal Court on the basis of diversity jurisdiction, it need only plausibly allege that the amount in controversy exceeds $75,000. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87-88 (2014).  Such allegations regarding the amount in controversy, however, do not equate to a stipulation as to that amount in damages, and the defendant remains "free to challenge the actual amount of damages in subsequent proceedings and at trial."  *Ibarra v. Manheim Invs., Inc.*, 775 F3d. 1193, 1198, n.1. (9th Cir. 2015); *see also LaCross v. Knight Transp. Inc.*, 775 F.3d. 1200, 1203 (9th Cir. 2015). The jurisdictional minimum may also be satisfied by claims for all damages and attorneys' fees in amounts reasonably anticipated at the time of removal.

16.    In assessing whether the amount in controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Express, Inc.,* 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). Indeed, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Bos. Mkt. Corp.,* 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

17.    Plaintiff's Complaint contains eight (8) causes of action as follows: (1) Failure to Pay Overtime Wages; (2) Failure to Pay Minimum Wages; (3) Failure

to Provide Meal Breaks; (4) Failure to Provide Rest Breaks; (5) Failure to Pay Wages Due Upon Termination; Waiting Time Penalties; (6) Failure to Issue Accurate and Itemized Wage Statements; (7) Failure to Indemnify; and (8) Unlawful Business Practices in Violation of Business & Professions Code §17200. (See Exhibit A.)

18.     Plaintiff alleges he began his employment with Defendant on November 8, 2014. (Complaint, ¶7.)  According to Defendant's records, during the time period relevant to Plaintiff's allegations, he performed actual work (i.e., excluding paid time off, leaves, etc.) in at least 148 workweeks. (Abler Decl., ¶6.)

19.     By relying on Plaintiff's allegations below, Defendant does not admit any of those allegations and reserves all defenses.

### 1.     Plaintiff's Unpaid Straight Time Claim.

20.     Plaintiff alleges "Defendant T-MOBILE failed to compensate him for an "additional ten (10) minutes of off the clock work performed *each shift*." (Complaint, ¶27 (emphasis added).)

21.     Plaintiff alleges that the relevant statute of limitations for his claim is four years (*i.e.*, from February 1, 2019 to his date of termination). (Complaint, ¶¶14, 66.)

22.     During the four years preceding Plaintiff's filing of his complaint, Plaintiff worked at least 1,323 shifts according to Defendant's records.  (Abler Decl. ¶6.)

23.     Plaintiff alleges he earned $34.00 per hour plus commissions. (Complaint, ¶7.)  According to Defendant's records, at all times relevant to Plaintiff's allegations, Plaintiff earned an average base hourly rate of at least $37.96 (Abler Decl., ¶5). For the purposes of this analysis and to err on the side of being conservative, Defendant has used the hourly rate alleged by Plaintiff, i.e., $34.00. That equates to $0.57 per minute ($34.00/60 minutes = $0.57).

24.     Plaintiff alleges he is entitled to straight time wages for all of the time he allegedly worked off the clock during the alleged four-year statutory period. (Complaint, ¶¶24-30.) In addition, he seeks liquidated damages in amount equal to his unpaid straight time damages, plus interest and attorneys' fees. (Complaint, ¶¶28, 29.)

25.     Based on these allegations, Plaintiff's straight time allegations place into controversy an amount exceeding $15,082.20, or [1,323 shifts] * [10 minutes/shift] * [$0.57 straight time rate per minute] * 2 (for liquidated damages) = $15,082.20 (excluding interest and fees).

## 2.     Plaintiff's Unpaid Overtime Claim And Double Time Claim.

26.     Plaintiff alleges claims for unpaid overtime and double-time. (Complaint, ¶¶8, 18, 19.)

27.     Plaintiff alleges the relevant statute of limitations for his claim is four years (*i.e.*, from February 1, 2019 to his date of termination). (Complaint, ¶14)

28.     Plaintiff fails to provide any allegations regarding the number of instances of overtime or double time violations or an alleged violation rate. (Complaint, ¶¶13-22.)  In such circumstances, a defendant may plausibly calculate the amount in controversy based on a 100% violation rate.  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398-401 (9th Cir. 2010); *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014).

29.     Despite this, Defendant has instead used a conservative calculation based on only one unpaid overtime hour and zero double-time hours per week.  This is imminently reasonable given that Plaintiff alleges Defendant's failure to pay overtime constitutes an unfair and unlawful business practice, which has occurred "over a significant period of time and in a *systematic manner* to the detriment of Plaintiff." (Complaint, ¶64 (emphasis added).)  Specifically, Plaintiff alleges that Defendant routinely violates its obligations under the Labor Code. (Complaint ¶¶8, 13-22, 52, 62-66.)

30.     Other courts have concluded that similar allegations in a complaint justify at least a one-hour per week violation rate for purposes of removal. *See, e.g.,* *Sanchez v. Abbott Lab'ys,* No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *5 (E.D. Cal. June 29, 2021) ("Courts in this Circuit have often found a 20% violation rate (one unpaid overtime hour per week) a reasonable and 'conservative estimate' when plaintiff alleges a 'policy and practice' of failing to pay overtime wages."); *Kastler v. Oh My Green, Inc.,* No. 19-cv-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (assuming one hour of unpaid minimum wages and unpaid overtime per week "is a conservative estimate routinely endorsed by courts in evaluating the amount in controversy requirement when plaintiff fails to include specific allegations"); *Stanley v. Distrib. Alts., Inc.,* No. EDCV 17-2173 AG (KKx), 2017 WL 6209822, at *2 (C.D. Cal. Dec. 6, 2017) (holding violation rate of "two hours of overtime" reasonable where the complaint alleged a "'pattern and practice' of wage and hour violations" but "no guidance as to the frequency of these violations" and there was "no competing evidence that would suggest lower violation rates"); *see also Hender v. Am. Directions Workforce L.L.C.*, No. 2:19-cv-01951-KJM-DMC, 2020 WL 5959908, at *8 (E.D. Cal. Oct. 7, 2020).; *see See, e.g.,*

31.     Plaintiff's overtime rate was at least $51.00/hour based on his alleged base pay rate of $34.00/hour.

32.     Based on a four-year statute of limitations, a very conservative estimate of the amount in controversy arising from Plaintiff's allegations is <u>$7,548.00</u> (i.e., [$51.00/hour] * [148 workweeks] * [1 overtime hour/week] = $7,548.00).

### 3.     Plaintiff's Meal Period Claim.

33.     Plaintiff alleges that he was systematically and regularly denied legally compliant meal periods. (Complaint, ¶¶9, 32-35.) Further, Plaintiff alleges that the relevant statute of limitations for his claim is four years (i.e., from February 1, 2019 to his date of termination). (Complaint ¶ 66.)

34.    Plaintiff alleges that during this time period, "on average, [he] missed four (4) meal periods … each week given the voluminous nature of his work." (Complaint, ¶9.) Meal period claims are properly considered in determining the amount in controversy. *Muniz v. Pilot Travel Ctrs. L.L.C.,* No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. Apr. 30, 2007).

35.    Under California law, employees who are denied the opportunity to take legally compliant meal periods are entitled to one hour of premium pay for each day that a violation occurs. *Marlo v. UPS,* No. CV 03-04336 DDP (RZx), 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009).

36.    Based upon the violation rate alleged in the Complaint, the amount placed in controversy by Plaintiff's meal period claim exceeds $20,128.00 (*i.e.*, [148 weeks] * [4 violations/week] * [$34.00/hour] = $20,128.00).

### 4.    Plaintiff's Rest Break Claim.

37.    Plaintiff alleges that he was systematically and regularly denied legally compliant meal periods.  Further, Plaintiff alleges that the relevant statute of limitations for his claim is four years (i.e., from February 1, 2019 to his date of termination). (Complaint ¶66.)

38.    Plaintiff alleges, "[o]n average, [he] missed…. five (5) rest breaks each week given the voluminous nature of his work." (Complaint, ¶9.)

39.    Under California law, employees who are denied the opportunity to take proper rest periods are entitled to one hour of premium pay for each day that a violation occurs. *Marlo*, 2009 WL 1258491, at *7. Rest period claims are properly considered in determining the amount in controversy. *Muniz,* 2007 WL 1302504, at *4.

40.    Based upon the violation rate alleged in the Complaint, the amount placed in controversy by Plaintiff's rest break claim exceeds $25,160.00 (*i.e.*, [148 weeks] * [5 violations/week] * [$34.00/hour] = $25,160.00).

### 5.   Plaintiff's Wage Statement Claim.

41.   Plaintiff alleges that, as a result of the substantive violations described above (unpaid straight wages, unpaid overtime, meal and rest break violations), Defendant provided inaccurate wage statements.  In other words, Plaintiff's claim for wage statement penalties is wholly derivative of his claims for unpaid straight wages, unpaid overtime, unpaid double-time, and meal and rest break violations. As such, it puts at issue each of his wage statements for every pay period during the one-year statutory period from February 2, 2022, forward.  *See, e.g.*, *Gipson v. Champion Home Builders, Inc.,* No. 1:20-cv-00392-DAD-SKO, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020) (100% assumed violation rate was reasonable based on reasonable assumption that class members suffered at least one violation of meal or rest break violations per pay period); *Nunes v. Home Depot U.S.A., Inc.,* No. 2:19-cv-01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 11, 2019) (same).

42.   According to Defendant's records, Plaintiff received at least four (4) itemized wage statements after February 2, 2022.  (Abler Decl. ¶7)

43.   Plaintiff alleges that under section 226(e)(1), an employee suffering injury as a result of an intentional failure to comply with section 226(a) is entitled to "recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Cal. Lab. Code § 226(e)(1).  (Complaint, ¶54.)

44.   Accepting Plaintiff's allegations as true, this claim places at least $350.00 in controversy.  (*I.e.*, [$50.00 * 1] + [$100.00 * 3] = $350.00).

### 6.   Plaintiff's Waiting Time Claim.

45.   Plaintiff alleges Defendant "willfully failed to pay Plaintiff all wages due to him at the time of his separation as required by Labor Code §§201 and 202." (Complaint, ¶45.)

46.     If an employer willfully fails to pay all wages due an employee timely at separation, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to a maximum of 30 calendar days. Cal. Lab. Code § 203.

47.     To calculate waiting time penalties, the employee's daily rate of pay is multiplied by up to thirty (30) days. *See Mamika v. Barca,* 68 Cal. App. 4th 487, 493 (1998) (holding that the waiting time penalty is "equivalent to the employee's daily wages for each day she or he remained unpaid up to a total of 30 days" and noting that the "critical computation" is "the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days").

48.     Solely for purposes of this jurisdictional analysis, Defendant relies on its records, which demonstrate Plaintiff worked around eight (8) hours per day and about five (5) days per week. (Abler Decl. ¶5.)  This yields a daily rate of at least $272.00 (8 hours/day * $34.00/hour) and an amount in controversy exceeding $8,160.00 (*i.e.*, [$272.00/day] * [30 days].)

### 7.     Plaintiff's Expense Reimbursement Claim.

49.     Plaintiff alleges he "routinely" expended his own funds to pay for work related expenses and was not reimbursed. (Complaint, ¶58.) Specifically, Plaintiff contends he was required to: (1) use his personal cellphone without reimbursement; and (2) use his personal vehicle without reimbursement. (Complaint, ¶¶59). Plaintiff does not attach any monetary sums to his claims for reimbursement.

50.     The IRS mileage reimbursement rate is 65.5 cents per mile. Assuming conservatively that Plaintiff intends to allege that he traveled 15 miles per month for work, his monthly expense reimbursement damages would be $9.80 (i.e., $0.655 * 15).  As a conservative estimate, Defendant also assumes Plaintiff is claiming at least $10.00 per month in cell phone reimbursement.  Combined, this conservatively totals $19.80 per month.

51.     Plaintiff worked during no less than 35 months between February 1, 2019 (the start of the applicable limitations period) and his last day of work (January 20, 2022).

52.     Using these conservative estimates in the absence of Plaintiff pleading any details, the amount in controversy would be at least $<u>693.00</u> [$19.80/month] * [35 months].

### 8.     Plaintiff's Claim For Attorneys' Fees.

53.     Plaintiff explicitly seeks attorneys' fees should he recover for any of the claims in this action. (See Complaint, ¶¶ 21, 29, 35, 41, 49, 56, 61, and Prayer for Relief section.) All attorneys' fees permitted by law, including post-removal fees, are included in the amount in controversy calculation. *Sawyer v. Retail Data, L.L.C.,* No. SACV 15-0184 JVS (RNBx), 2015 WL 3929695, at *2 (C.D. Cal. Apr. 29, 2015); *Garcia v. ACE Cash Express, Inc.,* No. SACV 14-0285-DOC (RNBx), 2014 WL 2468344, at *5 (C.D. Cal. May 30, 2014); *Brady v. Mercedes–Benz USA, Inc.,* 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002) (collection cases); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Kroske v. US Bank Corp.,* 432 F.3d 976, 980 (9th Cir. 2005); *see also Raymond v. Lane Constr. Corp.,* 527 F. Supp. 2d 156, 163 (D. Me. 2007) (holding that a rule that treats attorney's fees differently from any other category of damage for purposes of ascertaining the amount of the "matter in controversy" draws no support from the language of the statute).

54.     Attorneys' fees awards in other employment actions regularly exceed $100,000. *See, e.g., Lippold v. Godiva Chocolatier, Inc.,* No. C 10-00421 SI, 2010 WL 1526441, at *4 (N.D. Cal. Apr. 15, 2010) ("a typical individual wage and hour case generates fees in excess of $100,000").

55.     Here, Defendant has established the total amount in controversy, exclusive of attorneys' fees and interest, exceeds $75,000.00  As such, even if

Plaintiff recovered only one-third of the minimal amount in controversy $75,000.00 as attorneys' fees, this would yield a fee recovery of $<u>25,000.00</u>

### 9.   The Amount In Controversy Exceeds $75,000

56.    The total amount placed in controversy is summarized as follows:

| Claim | Amount in Controversy |
|---|---|
| Minimum Wages | $7,541.10 |
| Liquidated Damages | $7,541.10 |
| Overtime | $7,548.00 |
| Meal breaks | $20,128.00 |
| Rest breaks | $25,160.00 |
| Wage statements | $350.00 |
| Failure to Pay All Wages at Termination | $8,160.00 |
| Expense Reimbursement | $693.00 |
| Attorneys' Fees | $25,000.00 |
| Interest | Not calculated |
| TOTAL AMOUNT IN CONTROVERSY | $102,121.20 |

As such, the total amount placed in controversy is $102,121.20, which exceeds the jurisdictional minimum.

57.    Plaintiff's allegations therefore place more than the requisite seventy-five thousand ($75,000.00) in controversy. The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper.

## III.    DEFENDANT HAS SATISFIED THE REQUIREMENTS OF 28 U.S.C. §1446

58.    In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District Court of the United States in which this action is pending. The Superior Court of California, Los Angeles County, is located within the Central District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. §§ 84(a) and 1441(a).

59.    In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other papers served upon Defendant are attached as **Exhibit A**.

60.     In accordance with 28 U.S.C. § 1446(d), Defendant's counsel shall serve Plaintiff with a copy of this Notice of Removal and will file a Notice with the Clerk for the Los Angeles Superior Court. Defendant shall promptly file a Notice of Compliance of these requirements in this Court promptly after completion.

61.     As required by Federal Rule of Civil Procedure 7.1, Defendant concurrently files its Certificate of Interested Parties with this filing of the Notice of Removal.

## IV.  **CONCLUSION**

62.     For the foregoing reasons, Defendant T-MOBILE USA, INC. hereby remove the above-entitled action to the United States District Court for the Central District of California.

63.     In the event this Court has any questions regarding the propriety of this Notice of Removal, Defendant requests this Court set an evidentiary hearing so that they may have an opportunity to more fully brief the Court on the basis of this removal.

DATED:  March 1, 2023

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: _____
Evan R. Moses
Alexandra M. Asterlin
Michael J. Nader

Attorneys for Defendant
T-MOBILE USA, INC. dba T-MOBILE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant T-Mobile, certifies that this brief contains 4376 words, which complies with the word limit of L.R. 11-6.1.

DATED:  March 1, 2023

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: _____
Evan R. Moses
Alexandra M. Asterlin
Michael J. Nader

Attorneys for Defendant
T-MOBILE USA, INC. dba T-MOBILE

## CERTIFICATE OF SERVICE

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made.  At all times herein mentioned I have been employed in the County of Sacramento, in the office of a member of the bar of this court at whose direction the service was made.  My business address is 500 Capitol Mall, Suite 2500, Sacramento, CA  95814.  My email address is noreen.witt@ogletree.com.

On March 1, 2023, I served the following document(s):

**DEFENDANT T-MOBILE USA, INC. DBA T-MOBILE'S
NOTICE OF REMOVAL TO U.S. DISTRICT COURT**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as stated below.

| | |
|---|---|
| W. Zev Abramson | Attorneys for Plaintiff |
| Baruch Y. Kreiman | Ezequiel Paredes Jr. |
| Nissim Levin | |
| ABRAMSON LABOR GROUP | |
| 11846 Ventura Boulevard, Suite 100 | |
| Studio City, CA  91604 | |
| Telephone:  (213) 493-6300 | |
| Facsimile:  (213) 382-4083 | |
| Email:   wza@abramsonlabor.com | |
|      baruch@abramsonlabor.com | |
|      nissim@ abramsonlabor.com | |

☒　**BY MAIL:**  I placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☒　(Federal) I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on March 1, 2023, at Sacramento, California.

| | |
|---|---|
| Noreen F. Witt | *Noreen F. Witt* |
| ———————————————— | ———————————————— |
| Type or Print Name | Signature |

55276022.v2-OGLETREE